UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALEXANDER GREEN, A UNITED STATES CONGRESSMAN<br>PLAINTIFF, | §<br>§<br>§<br>§ | |
| v. | §<br>§ | CIVIL ACTION NO: _____<br>(JURY DEMANDED) |
| LUCINDA DANIELS, AND JOHN DOE UNIDENTIFIED AND UNKNOWN CONSPIRATORS,<br>DEFENDANTS. | §<br>§<br>§<br>§<br>§ | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR JURY TRIAL

Plaintiff Alexander Green ("Green"), a United States Congressman, by and through his attorneys, Benjamin L. Hall, III and The Hall Law Firm, respectfully allege as follows:

## I.

## PARTIES

1.1     Plaintiff Alexander Green is a United States Congressman who resides in the Ninth Congressional District of Texas.  He is a Texas citizen.

1.2     Lucinda Daniels ("Daniels") is an individual who resides at 9013 Harbor Hills Drive, Houston, Harris County, Texas 77054.  Daniels may be served with process at her physical address above or wherever she may be found.

1.3     The John Doe Conspirators are presently unknown and unidentified.  Their identities will be obtained during discovery, if necessary, and service of process will be requested and perfected accordingly.

## II.

## JURISDICTION AND VENUE ALLEGATIONS

2.1     This court has federal question jurisdiction over this case pursuant to 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 1333, 42 U.S.C. § 1981, and 42 U.S.C. 2000e, *et seq.* The court also has supplemental jurisdiction over any purported state law claims to the extent they arise out of and/or relate to the same set of facts and circumstances as contained in Plaintiff's claims pursuant to 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.* ("Title VII").

2.2     Venue is proper in this court because all or a substantial part of the claims and/or causes of action occurred and accrued in whole or in part within the Southern District of Texas and the defendant resides here.  See 28 U.S.C. § 1391.

2.3     Federal district court jurisdiction is also invoked through 2 U.S.C. § 1301 ("Congressional Accountability Act"), *et seq.*; 28 U.S.C. § 1442 ("Federal Officer Jurisdiction Statute"); and 28 U.S.C. §§ 2201 & 2202 ("Declaratory Judgment Act").

2.4     Federal question jurisdiction exists because the anticipated lawsuit by the declaratory judgment defendant in this case arises under federal law.  *See Franchise Tax Bd. of State of Cal. v. Construction Laborers Vacation Trust for Southern,* 463 U.S. 1, 18-19 (1983); *City of Huntsville v. City of Madison,* 24 F.3d 169, 172 (C.A.11 (Ala.),1994. Specifically, Defendant alleges, as described herein, that plaintiff subjected her to a hostile work environment during her employment with Plaintiff.   Such allegations would be actionable under the Congressional Accountability Act, which makes Title VII claims applicable to members or officers of Congress.

-2-

2.5     Moreover, as a member of Congress, Plaintiff is a federal officer under the Federal Officer Jurisdiction Statute, and the allegations made by Defendant arise out of his official duties as an employee. Thus, jurisdiction is mandatory even in the absence of a federal question. *See Alsup v. 3-Day Blinds, Inc.*, 435 F.Supp.2d 838, 842 (S.D.Ill. 2006)(federal court jurisdiction premised on § 1442 exists even in absence of federal question); *Maddox v. Williams,* 855 F.Supp. 406 (D.D.C.1994), aff'd, 62 F.3d 408 (D.C.Cir.1995) (holding that a member of Congress is an officer of the United States for purposes of 28 U.S.C. § 1442(a)).

2.6     The Court should also exercise jurisdiction over this declaratory judgment suit because a case or controversy exists between the parties and a declaratory judgment will serve a useful purpose by clarifying and settling the legal relations at issue and provide relief from uncertainty, insecurity and controversy giving rise to the proceeding. Defendant alleges Plaintiff, through his official actions, subjected her to a hostile work environment made unlawful by Title VII. The conduct alleged by Defendant does not constitute hostile work environment and, in any event, Defendant is certainly not entitled to the amount of damages–$1.8 million—she is demanding.

### III.

### NATURE OF THE ACTION

3.1     This suit is brought by Congressman Green to seek declaratory judgment and injunctive relief against Daniels, a former worker in Green's Texas congressional district office located in Houston, Harris County, Texas. Daniels, by and through her agents and attorneys, have advised Green that she intends to hold Green legally responsible for

workplace retaliation and discrimination pursuant to 42 U.S.C. § 1981 and under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, *et seq.*, and various similar state law provisions. Defendant has further advised Green that to support her demand for money totaling $1.8 million dollars, she intends to rely upon alleged workplace retaliation and hostility because of actions she now claims were undertaken by Green nearly 1½ years ago. Daniels, an attorney, by and through her agents, has further advised that her claims would be potentially embarrassing to the Congressman even if there is no merit to the claims. Plaintiff, therefore, files this suit for declaratory judgment and injunctive relief to protect against Defendant's spurious claims and threats and to obtain legal certainty regarding certain legal issues controlling these issues. Green files this suit to obtain declaratory judgment and injunctive relief regarding the parties' respective rights and obligations as set forth below and the workplace allegations asserted by Daniels. This action is brought under both Federal Rule of Civil Procedure 50 and 28 U.S.C. §§ 2201 and 2202.

## IV.

## FACTUAL BACKGROUND

4.1     Green was elected to Congress to represent the Ninth Congressional District of Texas in 2004. After being sworn into office, Green retained personnel to operate his congressional offices both in Washington, D.C. and Texas. Daniels, a 30+ year old, unmarried, Texas attorney[1], was hired to be the District Director in Green's congressional offices located in Houston, Texas. Her responsibilities included local employee

---

[1]     Green knew and had befriended Daniels before hiring her.

supervision, training, constituent response, calendaring, event attendance and general duties relating to the operations of the congressional office.  Daniels was tasked with general oversight and handling of the district office affairs.  She was responsible for insuring that the Congressman was timely notified of events, calendaring of matters, and making sure that the Congressman was responsive to constituent issues as well as attending to constituent issues in a timely fashion.

4.2     In addition to her functions in the district office, Daniels was responsible for ensuring that the Congressman was provided or had transportation to and from events, speech preparation and attendance to details to ensure that the Congressman's work on behalf of constituents was performed with efficiency and as productive as reasonably possible.

4.3     By virtue of her supervisory position, Daniels had direct access to the Congressman.  She often was responsible for personally providing transportation within Texas for the Congressman, just as other congressional employees were doing in the Washington, D.C. offices.  Daniels had direct after work hour access to the Congressman, just as has the Chief of Staff in the Washington, D.C. congressional office.

4.4     After working in the congressional offices for nearly three (3) years, Daniels alleges that she and the Congressman had a romantic encounter on one evening at her home in May of 2007–nearly a year and a half ago.  Now, approximately one and a half years later, after she voluntarily left her employment from his offices and is apparently struggling to find new employment, Daniels claims she suffered workplace retaliation, a hostile work environment and adverse workplace conditions by the Congressman because of the alleged romantic moment.  Daniels, by and through her attorneys, has made a

-5-

written demand for $1.8 million dollars based on her allegations of workplace retaliation and hostility.

4.5     Daniels has threatened to go public with her complaints if the Congressman does not pay her money. Green has done nothing wrong and refuses to pay "hush money" just for political expediency. Green will not be extorted or blackmailed by Daniels. He will not be the victim of a shake down by Daniels and her agents. Green demands vindication of his actions and now sues Daniels for declaratory judgment relief relating to her workplace allegations and her quest for money.

4.6     Contrary to Daniels' claims of workplace hostility, discrimination and/or retaliation because of her gender and/or the romantic moment, the evidence will show that Daniels voluntarily resigned her position and that her work performance was disappointing. Green also learned she was an illegal drug user while working for him. Daniels would often (1) not perform her job tasks; (2) not perform her assigned tasks in a timely fashion; (3) forget important calendaring and scheduling events; (4) fail to perform her managerial and supervisory duties as expected; (5) not complete assignments; (6) not show up for work; (7) come to work late; (8) acting sluggish at work as though under the influence of drugs; (9) slurring her speech as if under drug influence; (10) on multiple occasions falling asleep on the phone in the middle of telephone conversations with staff and the Congressman; and (11) have a general appearance of incoherence at times due to apparent drug use. In addition to these facts, Green directly learned of her illegal drug use when Daniels actually called the Congressman's cell phone on one occasion when the Congressman was unable to answer the phone. Daniels' call rolled-over to voicemail on the Congressman's cell phone. Green's cell phone voicemail recorded Daniel's entire

-6-

transaction of an illegal drug deal with a cocaine dealer.[2]  The actual audio recording, which Green listened to on his cell phone several days later, is being filed with this complaint,[3] and includes explicit statements by Daniels during the drug deal of the following nature:

(1)     Discussion of the effects of cocaine on her when used with other drugs;

(2)     Mixture of Benadryl, Handlebars and other drug additives to cocaine to obtain desired effects;

(3)     Prior drug use experiences by Daniels which caused differing extreme reactions in her;

(4)     Identification of other persons with whom Daniels has used illegal drugs and/or has seen using drugs (these names are on the tape);

(5)     Indications that Daniels had previously purchased drugs which she says had "b*llsh*t in it" (i.e., cocaine mixed with some other non-cocaine additive);

(6)     After Daniels questions whether the supplied cocaine is "cut" with any other substances, the drug dealer informs Daniels that the drugs she is receiving are "straight off the ki (kilo)" meaning the drugs were actually cut directly off the block of cocaine known as a "Kilo;"

(7)     Daniels is heard "snorting" the cocaine immediately before questioning whether it was "cut" with some other substance and being assured that it was "straight off the ki" ("kilo"); and

(8)     Daniels asks for the purchase price of the drugs, which she calls her "Tuesday special" price. In response, the drug dealer sells her the drugs for $40.00.

---

[2]     This recording occurred after Daniels' alleged romance.

[3]     The recording is being filed with this Complaint, <u>under seal</u>, until the public disclosure of the identity of other persons identified on the tape is resolved by the court. See Exhibit "A" (filed under seal). The identity of persons identified on the tape may warrant review by the court before full disclosure of the tape is placed in the public record. This sealed filing is only precautionary.

All of the above, as well as the names of other persons that Daniels used drugs with are clearly captured on this recording.

4.7     After retrieving this recording from his voice mail, Green, accompanied by his Chief of Staff, confronted Daniels with the tape, her drug use, and her deteriorating job performance. The audiotape was played in the presence of Daniels, Green and Green's Chief of Staff. Daniels immediately admitted the accuracy of the recording capturing her drug deal and agreed to submit to drug counseling and treatment. In reliance upon Daniels' commitment to obtain drug counseling, she was permitted to continue work on a provisional basis. Records were created relating to the Congressman's attempt to have Daniels receive the required drug treatment. Daniels did not fulfill the drug treatment and her work performance grew even more bizarre and peculiar. She ultimately voluntarily resigned her employment.

4.8     Now, nearly three months after voluntarily resigning her position, and nearly a year and a half after her alleged romantic moment, Daniels, by and through her agent, has now notified Green that she demands $1.8 million dollars in damages because she claims the Congressman retaliated against her in the workplace because of her gender and because she refused additional romantic requests. Leaving aside the falsity of these allegations, and the extreme delay in making these claims, coupled with Daniels' undeniable illegal drug usage, Daniels' $1.8 million dollar demand for workplace activities cannot be credibly maintained. Daniels, by and through her attorney, has advised Green and his attorneys that they justify this monetary demand based on claimed workplace discrimination and retaliation. Such claims give rise to federal claims under Title VII and the other above-cited provisions, as well as relate to claims against a federal officer.

-8-

4.9     Before filing this suit, counsel for both Daniels and Green attempted to conduct discussions to resolve this matter without judicial intervention.  Those discussions were not successful and, therefore, this suit is needed to determine the rights and obligations between the respective parties.

## V.

## CAUSES OF ACTION

5.1     Green repeats and realleges each and every allegation set forth above by reference as if fully set forth verbatim herein.

### FIRST CLAIM
### (Declaratory Judgment)

5.3     Green requests that the Court issue a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Daniels' work and ultimate resignation from the offices of the Congressman were based on legitimate business reasons, was neither discriminatory, hostile, nor retaliatory in nature and did not violate 42 U.S.C. § 1981, Title VII, or any Texas human rights laws or other state laws.

### SECOND CLAIM
### (Declaratory Judgment)

5.4     Reasserting all of the previous allegations by reference, Green requests that the Court issue a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that the lessening of Daniels' work assignments, responsibilities and duties was due to legitimate business reasons, was neither discriminatory, hostile, nor retaliatory in nature, and did not violate 42 U.S.C. § 1981, Title VII, or any Texas human rights laws or other state laws.

## THIRD CLAIM
### (Declaratory Judgment)

5.5     Green reasserts all of the previously alleged allegations by reference.

5.6     Daniels voluntarily resigned her employment from Green's congressional district office.  Green did not fire or terminate her.  Green requests that this court issue a declaration pursuant to 28 U.S.C. §§ 2201 and 2202 that Green's acceptance of Daniels' resignation, as well as Daniels' offer of resignation, were based on legitimate business reasons, were not based on discrimination, hostility and/or retaliatory bases in violation of 42 U.S.C. § 1981, Title VII, or any Texas human rights laws or other state laws.

## FOURTH CLAIM
### (Declaratory Judgment)

5.7     Green reasserts all of the previously alleged allegations set forth above by reference.

5.8     Daniels' illegal drug use, captured on audio recording, was legitimately obtained after she caused her cellular phone to dial the Congressman's cell phone, which captured her drug deal in voice mail.  The Congressman's use of that information for purposes of advising Daniels to obtain drug counseling and monitoring her work behavior in light of her known drug use was a legitimate business reason.  Daniels' failure to complete drug counseling and her continuing deterioration and substandard work performances constituted legitimate, non-discriminatory, non-hostile and non-retaliatory business reasons leading to her resignation and lessening of job functions and did not violate 42 U.S.C. § 1981, Title VII or any Texas human rights laws or other state laws. Green seeks a judicial declaration to this effect.

-10-

## FIFTH CLAIM
### (Declaratory Judgment/Injunctive Relief)

5.9     Green reasserts all of the previously alleged allegations by reference.

5.10    Daniels gained access to confidential constituent information that is proprietary and germane to the legislative functions of the Congressman's office.  Other information may be privileged under the Speech and Debate Clause and the Congressman has a right to seek protection and immunity relating to same.  Green, therefore, seeks a judicial declaration and injunctive relief that Daniels be precluded from disclosing, disseminating and/or using such information or proprietary, sensitive and/or confidential legislative information for any purpose.

## SIXTH CLAIM
### (Declaratory Judgment)

5.11    Green reasserts all of the previously alleged allegations by reference.

5.12    Daniels' claims of workplace retaliation, workplace hostility and workplace discrimination lack bases in law and fact.  However, even if they did have merit—which they do not—such claims are jurisdictionally barred and foreclosed under Title VII and 42 U.S.C. § 1981, *et seq.* for failure to timely file complaints and/or exhaust administrative remedies. Green seeks a judicial declaration that Daniels' workplace claims, if any, (1) do not exist against Green; (2) are time barred; (3) are jurisdictionally barred; (4) are foreclosed by the Speech and Debate Clause; and/or (5) fail because Daniels has not exhausted her administrative remedies.

## PENDENT CLAIMS

5.13   Prior to instituting this litigation, Green was advised that other persons were involved in encouraging Daniels to hurt the Congressman.   Specifically, Daniels approached her attorney surrounded by persons who expressed hatred for the Congressman.   One of those persons is believed to have previously promised to try to "bring down the Congressman."   To the extent these individuals, with improper motives, are inducing, enticing and conspiring with Daniels to bring down the Congressman or to try to blackmail, extort, cajole and otherwise have Green pay $1.8 million dollars in "hush money" based on Daniels' trumped-up charges, Green asserts these conspirators should also be identified and added to this action such that adequate injunctive relief may be obtained against them to enjoin improper solicitations.   To the extent Daniels files any counterclaims or asserts any state law claims, Green also requests the Court to exercise its pendent jurisdiction over such claims arising out of or relating to the same facts or circumstances as alleged herein.

## VI.

## PRAYER

Given the above, Plaintiff requests that Daniels and the John Doe Conspirators be cited to appear herein and that declaratory judgment and injunctive relief, as requested above, be granted in Green's favor and for such other and further relief to which the Court deems Green entitled.   A jury is requested as allowed by law.

Respectfully submitted,

Benjamin L. Hall, III
Federal Bar No. 8787
ATTORNEY-IN-CHARGE

Of counsel:
The Hall Law Firm
530 Lovett Boulevard
Houston, Texas 77006
(713) 942-9600
(713) 942-9566 (Facsimile)

-13-